UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARTIS CHARLES WHITFIELD            CIVIL ACTION

VERSUS                              NO. 17-17450

WOOD GROUP PSN, INC.              MAGISTRATE JUDGE
                                      JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

Plaintiff, Artis Charles Whitfield, brings this employment discrimination action against his former employer, Wood Group PSN, Inc. ("Wood Group"), alleging claims of discriminatory termination, failure to promote and failure to hire based on his race and age in violation of Title VII, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Record Doc. No. 1. This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 27.

On May 14, 2019, Wood Group filed a Motion for Summary Judgment supported by affidavits, verified exhibits and an excerpted transcript of plaintiff's deposition testimony. Record Doc. No. 39. Whitfield, who has been proceeding pro se since his counsel was permitted to withdraw, Record Doc. No. 34, obtained an extension of time both to obtain new counsel and to respond to the motion. Record Doc. No. 40. The court orally advised plaintiff during a May 15, 2019 status conference that his response should include sworn affidavits, including his own, or other evidentiary materials that set forth specific facts demonstrating that there is a genuine issue of material fact for trial in this case. Id.

Whitfield filed a timely memorandum in opposition to defendant's summary judgment motion, Record Doc. No. 44, which incorporates plaintiff's own affidavit and five affidavits of his former co-workers. Plaintiff submitted no other evidence. Defendant received leave to file a reply memorandum. Record Doc. Nos. 50, 52, 53.

On July 11, 2019, Whitfield filed a Motion to Appoint Counsel. Record Doc. No. 46. Under the court's protocol for appointment of counsel from its Civil Pro Bono Panel, "Counsel from the Panel must not be appointed as a matter of course or ordinary practice, since there is no automatic right to appointment of counsel in civil cases." Resolution of the En Banc Court ¶ (3)(e) (E.D. La. Apr. 22, 2014, adopted as permanent Oct. 15, 2016). In Title VII cases, the court must consider three factors: (1) the merits of plaintiff's discrimination claims; (2) plaintiff's efforts to secure counsel; and (3) plaintiff's financial ability to retain counsel. Id.; Gonzalez v. Carlin, 907 F.2d 573, 580 (5th Cir. 1990). The court took plaintiff's sworn testimony concerning his efforts to secure counsel and financial status. Record Doc. No. 47. Although plaintiff indicated that he engaged in unsuccessful efforts to secure new counsel, his testimony established that he is not financially eligible for appointed counsel. Id. The court deferred ruling on the Motion to Appoint Counsel, pending review and evaluation of all briefing on defendant's summary judgment motion, to consider whether the third relevant factor, the merits of plaintiff's case, tips the balance and warrants appointment of counsel. Id.

On July 11, 2019, plaintiff filed a Motion for Issuance of Subpoenas. Record Doc. No. 45. Defendant filed a timely opposition. Record Doc. No. 48.

Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that plaintiff's Motions to Appoint Counsel and for Issuance of Subpoenas are DENIED and that defendant's Motion for Summary Judgment is GRANTED, for the following reasons.

I.    PLAINTIFF'S MOTIONS

Plaintiff's Motion to Appoint Counsel is denied. Evaluation of the briefing submitted by both parties in connection with defendant's Motion for Summary Judgment indicates that plaintiff's case lacks merit, for the reasons discussed below. Thus, balancing of the Gonzalez factors militates against appointment of counsel.

Plaintiff's Motion for Issuance of Subpoenas is also denied. The motion seeks leave of court to subpoena plaintiff's own employment records and those of Damian Daigle, Brandon Godchaux and Bradley Prejean. Record Doc. No. 45. Because plaintiff's motion was filed more than two months after both the discovery deadline had passed and defendant had filed its summary judgment motion, the court construes the motion as (1) seeking leave to conduct discovery after expiration of the scheduling order deadline pursuant to Fed. R. Civ. P. 16(b); and (2) seeking more time under Fed. R. Civ. P. 56(d) to obtain facts to support his opposition to the pending summary judgment motion.

Where – as here – the court has entered a scheduling order setting a deadline, Record Doc. No. 29, the schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's

- 3 -

explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." Choice Hotels Int'l, Inc. v. Goldmark Hospitality, LLC, 2014 WL 80722, at *2 (N.D. Tex. Jan. 9, 2014) (quotation omitted) (citing S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003)); accord Borden v. United States, 537 F. App'x 570, 574 (5th Cir. 2013) (citing Reliance Ins. Co. v. La. Land & Expl. Co., 110 F.3d 253, 257 (5th Cir. 1997); Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir. 1990)). The good cause standard applies to discovery deadlines established by the court, Colonial Freight Sys., Inc. v. Adams & Reese, L.L.P., 542 F. App'x 142, 145 (5th Cir. 2013); Paz v. Brush Engineered Materials, Inc., 555 F.3d 383, 390 (5th Cir. 2009), and "require[s] the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" Puig v. Citibank, N.A., 514 F. App'x 483, 487–88 (5th Cir. 2013) (quoting S & W Enters., 315 F.3d at 535).

Plaintiff provides no persuasive explanation for his delay in seeking the requested employment records or why he could not meet the discovery deadline. His "Motion for Opposition of Summary Judgment" states: "Due to the lack of diligence on behalf of my previous attorney, documentation for my case was not submitted." Record Doc. No. 44 at p. 1. As noted above, the Fifth Circuit in Puig and S & W has not accepted lack of diligence as a good reason for failure to meet deadlines. As to importance, production of the requested records appears unimportant because plaintiff's entire personnel file and portions of Prejean's personnel file relevant to plaintiff's claims against him have already been produced to

plaintiff in discovery. Record Doc. No. 39-2 at pp. 5–25. Production of Godchaux's records is unimportant because, as discussed in detail below, Godchaux is <u>not</u> a Wood Group employee and plaintiff's failure to promote claim concerning Godchaux is time-barred and fails on the merits. Daigle's records are unimportant because plaintiff makes no claims concerning Daigle's employment status in this matter and, even if he did, plaintiff had ample time to request these records during the <u>12 months</u> of discovery provided in this case. Prejudice to defendant would be substantial because it already has filed its summary judgment motion and plaintiff has provided no explanation for how the additional discovery will create issues of material fact that would preclude summary judgment in this matter. A continuance would not cure defendant's substantial prejudice. Plaintiff cannot establish good cause to conduct discovery after expiration of the discovery deadline because all four factors weigh against permitting him to do so.

Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, <u>for specified reasons</u>, it cannot present facts essential to justify its opposition, the court may: . . . allow time to obtain affidavits or declarations or to take discovery." (Emphasis added). Whitfield has submitted <u>no</u> affidavits or declarations to support the requested extension of time. "Plaintiff's failure to attach such an affidavit is sufficient grounds to deny [his] motion." <u>McDonald v. Kansas City S. Ry.</u>, 2017 WL 1709353, at *4 (E.D. La. May 3, 2017) (citing <u>Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.</u>, 788 F.3d 218, 226 (6th Cir. 2015); <u>Scotch v. Letsinger</u>, 593 F. App'x 276, 278 (5th Cir. 2014); <u>Leza v. City of Laredo</u>, 496 F. App'x 375, 377–78 (5th Cir. 2012)).

However, even if the court considered the motion, despite the absence of any supporting affidavit,

> the party filing the motion must demonstrate how additional discovery will create a genuine issue of material fact. In particular, the party opposing summary judgment must set forth a plausible basis for believing that <u>specified facts</u>, susceptible of collection within a reasonable time frame, probably exist and indicate <u>how the emergent facts, if adduced, will influence the outcome</u> of the pending summary judgment motion. That party must also have diligently pursued discovery.

<u>Jacked Up, L.L.C. v. Sara Lee Corp.</u>, 854 F.3d 797, 816 (5th Cir. 2017) (citations and quotations omitted) (emphasis added). Whitfield neither specifies what facts he seeks from the requested records nor explains how those unspecified facts or additional discovery might influence the outcome of Wood Group's summary judgment motion. In his summary judgment opposition, Whitfield relies on facts that are exclusively within his own knowledge and the knowledge of former co-workers. Because "it appears that further discovery will not provide evidence creating a genuine issue of material fact," the court denies plaintiff's Rule 56(d) motion and proceeds to decide defendant's motion for summary judgment. <u>Id</u>.

II.    <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

  A.    <u>Standards of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Id. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery and any affidavits supporting the conclusion that there is no genuine issue of material fact. Id. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. Id. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. Id. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Equal Emp't Opportunity Comm'n v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. See Anderson, 477 U.S. at 249–50; Hopper v. Frank, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398–99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing

summary judgment. See Tolan v. Cotton, 572 U.S. 650, 656 (2014); Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. See Lynch Props., Inc. v. Potomac Ins. Co. of Ill., 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. See Celotex, 477 U.S. at 322–25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. See Little, 37 F.3d at 1075–76.

B.    The Undisputed Material Facts

The competent summary judgment evidence establishes the following material facts, which are accepted as undisputed solely for purposes of the pending summary judgment motion. Wood Group is a company that provides operations and maintenance services to the

oil, gas and petrochemical industries. Record Doc. No. 39-2 at p. 1. As a subcontractor, it provides personnel to its clients' offshore drilling platforms in the Gulf of Mexico, including those operated by former client Energy XXI. Id. at p. 2. Client platforms are often staffed with personnel employed by multiple subcontractors. Id. Wood Group has adopted a written company policy that prohibits discrimination against any employee on the basis of race, religion, color, nationality ethnicity, disability, age or any other characteristic protected by law. Id. at p. 4.

When hiring production operators to staff client platforms, Wood Group conducts assessment tests of applicants and assigns them to either an A-, B- or C-Operator level, with A-Operators being the most experienced and bearing the most responsibility. Id. at p. 2. Lead operators, who are tasked with directing and supervising the production crew on the platform, are chosen from the pool of A-Operators. Id.

A decision to promote an operator working on a client platform to a higher level must be approved by the client. Id. The client has the right to reject or remove Wood Group personnel from its platform. Id. The ultimate authority to reject or remove Wood Group personnel from a client platform lies with the client's foreman. Id. When a client rejects or removes a Wood Group employee from a platform, Wood Group's regular practice is to place that employee on "float" for 30 days, during which the employee is available for other assignments if they arise. Record Doc. Nos. 39-2 at p. 3; 39-4 at pp. 18–21, 42–43. If another assignment does not become available within the 30-day period, Wood Group's regular

business practice is to lay off the employee for lack of work/reduction-in-force. Record Doc. No. 39-2 at p. 3.

Whitfield, a 45-year-old African-American/American-Indian, initially was hired by Wood Group on January 21, 2011, and assigned to work as a C-Operator on a platform operated by Wood Group client Energy XXI. Record Doc. No. 39-4 at p. 74. He was promoted to B-Operator on April 4, 2011. Id. at pp. 23–25. On May 3, 2013, plaintiff was involuntarily terminated from Wood Group after testing positive on a random drug screening. Record Doc. Nos. 39-2 at p. 12; 39-4 at p. 26. After plaintiff completed a substance abuse program, Wood Group re-hired him on July 1, 2014, as a B-Operator and assigned him to Energy XXI's Main Pass 73A ("MP-73A") platform. Record Doc. Nos. 39-2 at p. 6; 39-4 at pp. 27–28. Damian Daigle, a Wood Group employee, was plaintiff's lead operator and direct supervisor on MP-73A. Record Doc. Nos. 39-3 at p. 1; 39-4 at p. 9.

Bradley Prejean was another Wood Group production operator on MP-73A. Prejean was assigned to MP-73A as a C-Operator on March 4, 2013. Record Doc. No. 39-2 at p. 19. He was promoted to B-Operator on February 16, 2014, and was then promoted to A-Operator on January 18, 2015. Id. at pp. 15, 17.

Brandon Godchaux was another production operator on MP-73A. Wood Group has no record of employment for Godchaux, but record evidence indicates that he was employed by Sirius, another subcontractor. Record Doc. Nos. 39-2 at p. 3; 39-3 at pp. 1, 8. Godchaux was assigned to MP-73A on an unknown date, but at least before December 26, 2015, and came to the platform as an A-Operator. Record Doc. No. 39-3 at pp. 1, 8. Wood Group did

not have any authority over or provide any input in Godchaux's promotion decisions. Id. at p. 1.

After plaintiff learned through word of mouth that an A-Operator position was available on MP-73A, plaintiff verbally asked Daigle three or four times to recommend him for the job by informing the Energy XXI foreman of his interest and qualifications. Record Doc. No. 39-4 at pp. 29–37. Daigle did not recommend plaintiff for promotion based on his assessment that plaintiff lacked necessary qualifications for the A-Operator position. Record Doc. No. 39-3 at p. 2. Specifically, Daigle believed that plaintiff exhibited a negative attitude, was not a "team player," lacked leadership skills, did not mentor others, lacked capacity for detailed troubleshooting, disrespected A-Operators' authority, and balked at constructive criticism or helpful demonstrations from A-Operators. Id.

Throughout his assignment to MP-73A, plaintiff repeatedly expressed his desire to leave the platform and either work for Shell or be transferred to another platform. Record Doc. Nos. 39-2 at pp. 23–24; 39-3 at pp. 2–3; 39-4 at pp. 20, 36, 38, 48. In or around March 2016, Whitfield engaged in a verbal altercation with Energy XXI supervisor Darryl Higgins, in which Whitfield "started to curse and holler at Mr. Higgins for allegedly insulting him." Record Doc. No. 39-3 at p. 3. On April 5, 2016, in light of the Higgins incident, plaintiff's previously voiced displeasure about working on MP-73A and Daigle's assessment of plaintiff's poor job performance, Energy XXI foremen Harry Larimer and Mark Freeman decided to remove Whitfield from the platform. Record Doc. No. 39-2 at pp. 23–24. Energy XXI's reasons cited for plaintiff's removal included his constant expression of his desire

leave the platform and work for Shell, unhappiness with his position, inability to get along with co-workers, disrespect of authority, overall bad attitude and lack of effort to mentor subordinates. Id.

Larimer emailed Milton Crochet, Wood Group's project/resource manager, and Butch Fruge, Wood Group's client liaison for Energy XXI, requesting that Whitfield be removed from the platform. Id. Crochet, with Fruge's agreement, had plaintiff removed from the platform and placed on "float," whereby plaintiff was available for another assignment if one materialized. Record Doc. No. 39-2 at pp. 3, 25. Because no assignment became available within the next 30 days, plaintiff was laid off on May 13, 2016, for lack of work/reduction-in-force per Wood Group's regular business practice. Id. at pp. 3, 5.

Following his termination, plaintiff applied for an A-Operator position with Wood Group on June 22, 2016, but subsequently was not hired. Record Doc. No. 39-4 at pp. 45–47. Plaintiff was informed that the position was filled but does not know who was selected, the race or age of the individual selected or who made the hiring decision. Id.

Plaintiff filed a charge of discrimination with the Louisiana Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC") on January 10, 2017, asserting race and age-based discriminatory termination and failure to promote claims against Wood Group pursuant to Title VII and the ADEA. Record Doc. No. 1 at p. 8. Plaintiff did not allege a failure to hire claim in his charge of discrimination, but does allege this claim in his complaint. Id. at p. 4. Plaintiff did not allege retaliation or hostile work environment claims in his charge of discrimination or his complaint, but alleges these claims for the first

time in his affidavit in support of his opposition to the summary judgment motion. Record Doc. No. 44-1.

C.      Standards for Race and Age Discrimination Claims

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)). Title VII claims are analyzed under the burden-shifting evidentiary framework created in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in which a plaintiff must first provide competent evidence of a prima facie case. To establish a prima facie case of discrimination, a plaintiff must prove that he

(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably.

Standley v. Rogers, 2017 WL 958318, at *1 (5th Cir. Mar. 10, 2017) (quoting Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)); accord Buckhanan v. Shinseki, 665 F. App'x 343, 349 (5th Cir. 2016) (citing Haire v. Bd. of Supervisors, 719 F.3d 356, 363 (5th Cir. 2013)).

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or discharge any individual [age 40 or above] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Fifth Circuit applies the

McDonnell Douglas framework to ADEA claims, but modifies the fourth prong such that plaintiff must show that he was either (1) replaced by someone outside the protected class; (2) replaced by someone younger; or (3) otherwise discharged because of his age. Jackson v. Cal–Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010).

To establish a prima facie case for a failure to promote claim, a plaintiff must additionally establish that he actually applied for the position at issue. Browning v. Sw. Research Inst., 288 F. App'x 170, 175 (5th Cir. 2008). "'The application requirement is important to establishing' the prima facie case 'because it shows that the decision-maker knew about the plaintiff and the plaintiff's interest in the position.'" Everett v. Mississippi, 106 F. App'x 264, 266 (5th Cir. 2004) (quoting Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1275 (11th Cir. 2002)).

The elements of a prima facie case are slightly different in a reduction-in-force case.

In a reduction-in-force case, a party makes out a prima facie case of age discrimination by showing (1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.

Tyler v. La–Z–Boy Corp., 506 F. App'x 265, 269 (5th Cir. 2013) (citing Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996); Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 812 (5th Cir. 1991); Thornbrough v. Columbus & Greenville R.R ., 760 F.2d 633, 644 (5th Cir. 1985)) (footnote and quotations omitted). In such a case, plaintiff must

also show that an position for which he was qualified was <u>available</u> at the time of his discharge. <u>Creaghe v. Albemarle Corp.</u>, 98 F. App'x 972, 975 (5th Cir. 2004).

If plaintiff can establish a prima facie case under either the traditional or the reduction-in-force standard, the second and third steps of the burden-shifting analysis are the same. The burden of production shifts to the defendant to present a legitimate, non-discriminatory reason for the challenged employment action. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993). Defendant must set forth, through admissible evidence, "reasons for its actions which, <u>if believed by the trier of fact</u>, would support a finding that unlawful discrimination was not the cause of the employment action." <u>Id</u>. (emphasis in original). "Defendant's burden is one of production, not persuasion . . . ." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 142 (2000) (quotation omitted). The defendant "need not prove that it was actually motivated by its proffered reason. . . . The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be." <u>Joseph v. City of Dallas</u>, 277 F. App'x 436, 439 (5th Cir. 2008) (quotations omitted).

"If the defendant meets its burden, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet [his] ultimate burden of persuasion on the issue of intentional discrimination." <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 350 (5th Cir. 2005). To meet this burden,

> the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered

explanation is false or "unworthy of credence." An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action.

Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (citing Reeves,530 U.S. at 143) (additional citations omitted). "In determining whether the employer's stated reason is false, the trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the [adverse employment action]." E.E.O.C. v. Louisiana Office of Cmty. Servs., 47 F.3d 1438, 1443 (5th Cir. 1995) "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient." Id. at 1444. A factfinder can infer pretext upon a showing that the unsuccessful employee was "'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." Id.

The Supreme Court held in Reeves that a trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation combined with plaintiff's establishment of a prima facie case.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted

justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

This is not to say that such a showing by the plaintiff will <u>always</u> be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

<u>Reeves</u>, 530 U.S. at 147–48 (citations omitted) (emphasis in original).

D.    <u>Failure to Promote and Hire Claims</u>

Wood Group argues that Whitfield's failure to promote claims are time-barred because the two discrete acts of promotion referenced by plaintiff occurred more than 300 days before he filed his charge of discrimination with the Louisiana Commission on Human Rights and EEOC. Defendant further argues that Whitfield failed to exhaust administrative remedies as to his failure to hire claim because he did not allege this claim in his charge of discrimination. Even if Whitfield's charge of discrimination was timely filed and fully exhausted, Wood Group asserts that he cannot establish prima facie cases of race and age discrimination as to his failure to promote and hire claims. Even if plaintiff established prima facie cases for these claims, Wood Group argues that plaintiff cannot rebut its legitimate, non-discriminatory reasons for its decisions.

1.    Plaintiff's failure to promote claims are not actionable under Title VII or the ADEA for failure timely to file his charge of discrimination.

Plaintiff filed a charge of discrimination with the Louisiana Commission on Human Rights and EEOC on January 10, 2017, alleging that Wood Group discriminated against him, a 45-year-old African-American/American Indian, based on age and race when it promoted

two white employees in their twenties, Bradley Prejean and Brandon Godchaux, to A-Operator positions instead of plaintiff. Record Doc. No. 1 at p. 8.

Under Title VII, a charge of discrimination filed with a state or local agency must be filed within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Similarly, under the ADEA, an age discrimination charge alleging unlawful practices occurring in a state such as Louisiana, which has legislation prohibiting age discrimination and an established a state authority to grant or seek relief from such practices, must be filed within 300 days after the alleged unlawful practice occurred. 29 U.S.C. §§ 626(d)(1)(B), 633(b); La. R.S. 23:303, 23:312.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they relate to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Goring v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll., 414 F. App'x 630, 632–33 (5th Cir. 2011); Hartz v. Administrators of Tulane Educ. Fund, 275 F. App'x 281, 289 (5th Cir. 2008).

In plaintiff's case, the discrete acts of Prejean and Godchaux's promotions to A-Operator positions must have occurred no earlier than March 16, 2016 – 300 days before the charge of discrimination filing date – to be actionable under Title VII and the ADEA. Prejean's Wood Group personnel records indicate that he was promoted to A-Operator on January 18, 2015, well over 300 days before plaintiff filed his charge of discrimination. Record Doc. No. 39-2 at p. 15. Therefore, plaintiff's failure to promote claim as to the position filled by Prejean is time-barred and is not actionable under Title VII and the ADEA.

Godchaux worked on MP-73A with plaintiff, but the record reflects that Godchaux was employed by Sirius, <u>not</u> Wood Group. Record Doc. Nos. 39-2 at p. 3; 39-3 at pp. 1, 8. The date Godchaux was promoted to A-Operator is unclear from the record; however, the evidence indicates that he was promoted <u>more than 300 days</u> before plaintiff filed his charge of discrimination. When Godchaux was assigned to MP-73A, <u>he was already an A-Operator</u>, but his date of assignment is unknown. Record Doc. No. 39-3 at p. 2. However, lead operator Daigle's declaration recounts an incident on MP-73A where "A-Operator (Mr. Godchaux)" was awakened in the middle of the night to sign a job safety analysis record. Record Doc. No. 39-3 at p. 2. The record signed by Godchaux is dated December 26, 2015. Id. at p. 8. Thus, the undisputed record establishes that Godchaux attained the position of A-Operator, at the very least, a few months before March 16, 2016. Therefore, Godchaux's promotion did not occur within 300 days of the charge of discrimination filing date. Plaintiff's failure to promote claim is time-barred as to Godchaux's promotion and is not actionable under Title VII and the ADEA.

2.      Plaintiff's failure to hire claim is not actionable under Title VII or the ADEA for failure to exhaust administrative remedies.

In his complaint and deposition testimony, plaintiff alleges that after his termination on May 21, 2016, he applied and was interviewed for an A-Operator position with Wood Group on June 22, 2016, but was not hired based on his age and race. Record Doc. Nos. 1 at p. 4; 39-4 at pp. 45–49. Defendant argues that plaintiff failed to exhaust administrative remedies as to his failure to hire claim because plaintiff's charge of discrimination does not reference such a claim and identifies the last date of discriminatory conduct as May 21, 2016,

approximately one month before Wood Group declined to hire plaintiff. Record Doc. No. 1 at p. 8.

A plaintiff asserting a Title VII or ADEA claim must exhaust administrative remedies before pursuing his claim in district court. 42 U.S.C. § 2000e, et seq.; 29 U.S.C. § 621 et seq. "Under both Title VII and the ADEA, a lawsuit stemming from EEOC charges is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination." Kojin v. Barton Protective Servs., 339 F. Supp. 2d 923, 926 (S.D. Tex. 2004) (citing Fine v. GAF Chemical Corp., 995 F.2d 576, 578 (5th Cir. 1993)). A claim is not reasonably expected to grow out of a plaintiff's charge of discrimination if the claim is not alleged in the charge itself. Ellzey v. Catholic Charities Archdiocese of New Orleans, 833 F. Supp. 2d 595, 601 (E.D. La. 2011); Huda v. Lockheed Martin, 2008 WL 191300, at *3 (E.D. La. Jan. 22, 2008); Kebiro v. Walmart, 193 Fed. App'x 365, 367 (5th Cir. 2006); Gomez v. Orleans Parish School Board, 2005 WL 2050285, at *5 (E.D. La. Aug. 11, 2005); Thomas v. Tex. Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000).

In determining the limitations on a plaintiff's Title VII or ADEA lawsuit, courts must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006). To ascertain the reasonable scope of an EEOC investigation, the Fifth Circuit interprets the contents of a plaintiff's charge of discrimination based on the balancing of two competing policies. On the one hand, because "the provisions of Title VII [and the ADEA] were not designed for the sophisticated," and

because most charges of discrimination are initiated without assistance of legal counsel, the scope of a charge should be construed liberally in favor of the plaintiff. Id. at 788 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)). On the other hand, the primary purpose of Title VII and the ADEA is to trigger the investigatory procedures of the EEOC, in an effort to achieve non-judicial resolution of employment discrimination claims. Pacheco, 448 F.3d at 789. This consideration calls for stricter interpretation of the plaintiff's charge of discrimination, because "[a] less exacting rule would . . . circumvent the statutory scheme, since Title VII [and the ADEA] clearly contemplate[] that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." Id. at 788–89.

Even under the most liberal and forgiving interpretation, the substance of plaintiff's charge of discrimination makes no reference to Wood Group's failure to hire him for an A-Operator position in June 2016. Moreover, the charge states that the last date of discrimination was May 21, 2016, the date he was terminated from Wood Group, which indicates that the reasonable scope of the agency investigation did not extend beyond this date to the events surrounding his June 2016 application and non-hiring. The investigatory procedures of the EEOC were never triggered as to plaintiff's failure to hire claim, and there was no effort to achieve non-judicial resolution of this claim before the present lawsuit was filed. To allow plaintiff to pursue a failure to hire claim in this matter would thus circumvent the statutory purposes of Title VII and the ADEA. Plaintiff's failure to hire claim is not

actionable under Title VII and the ADEA for failure to exhaust administrative remedies before filing suit.

     3. Even if plaintiff's failure to promote claims were timely alleged and his failure to hire claim was administratively exhausted, plaintiff cannot establish prima facie cases for these claims <u>or</u> rebut defendant's legitimate, non-discriminatory reasons for its decisions.

     a. <u>Failure to Promote Claims</u>

As an initial matter, although Godchaux worked on MP-73A with plaintiff, it is undisputed that Godchaux <u>never was employed by Wood Group</u>. Record Doc. No. 39-3 at pp. 1–2. Moreover, it is undisputed that Wood Group had <u>no authority or input</u> in making promotion recommendations as to Godchaux. <u>Id</u>. at p. 1. Whitfield cannot establish a prima facie case based on failure to promote because the competent summary judgment evidence shows that Wood Group <u>did not promote Godchaux</u>, and thus did not subject plaintiff to an adverse employment action. Accordingly, defendant is entitled to summary judgment in its favor as to plaintiff's failure to promote claim regarding Godchaux.

    It is undisputed that Prejean, a white individual under the age of 40, is a Wood Group employee who was promoted to A-Operator and that plaintiff is a 45-year-old African-American/American Indian who was not promoted to this position. As to the application requirement, plaintiff testified that he verbally asked lead operator Daigle "three or four times" to recommend him for promotion to A-Operator by informing the Energy XXI foremen of his interest and qualifications. Record Doc. No. 39-4 at pp. 29–37. Plaintiff understood that Energy XXI's foremen held the ultimate decision-making authority in promoting platform employees. <u>Id</u>. at pp. 31, 39–40. Defendant argues that plaintiff's verbal

expression of promotion interest to a non-Energy XXI foreman and failure to fill out any paperwork for the position is insufficient to establish application for the position with a decision-maker's knowledge. Record Doc. No. 39-1 at p. 14. However, plaintiff's deposition testimony indicates that he understood regular promotion application practice on the platform to involve an employee informing his lead operator about his interest and the operator then taking the request "up the chain" to the Energy XXI foremen. Id. at pp. 29–32. Moreover, the evidence shows that the foremen took Daigle's opinion into consideration when making employment-related decisions as to plaintiff, suggesting that Daigle acted as the decision-maker in some capacity. Record Doc. No. 39-2 at pp. 23–24. Thus, an issue of material fact remains as to whether plaintiff applied for the promotion with a decision-maker's knowledge.

As to the issue of plaintiff's qualifications for the A-Operator position, the parties have submitted conflicting evidence. The parties provided no written or otherwise published job description establishing the criteria of qualifications that Wood Group and Energy XXI consider in their assessment of A-Operator candidates. However, plaintiff's testimony and lead operator Daigle's declaration describe these qualifications. Plaintiff testified that an A-Operator must be able to "run the platform," which includes being responsible for compliance, maintenance, testing and training B- and C-Operators. Record Doc. No. 39-4 at p. 22. Plaintiff's affidavit in opposition to the summary judgment motion further states that an A-Operator should be able to "troubleshoot and problem solve." Record Doc. No. 44-1 at p. 3. According to plaintiff's assessment of his own job performance, he efficiently performed routine duties on the platform such as maintenance repairs, inspections and setting

up ladders and beverages for the crew. Id. at pp. 2–3. Plaintiff stated that he strived to impart his job-related knowledge to other employees on the platform. Id. at p. 3. Affidavits submitted by plaintiff's former co-workers indicate that plaintiff performed routine duties smoothly, completed all necessary paperwork, had troubleshooting ability, was a team player, and mentored subordinates. Record Doc. No. 44-2. None of these affidavits were completed by employees with a supervisory role over plaintiff's work on MP-73A, and most, if not all, of the affidavits were written by employees who never worked with plaintiff on MP-73A.

Daigle, plaintiff's direct supervisor on MP-73A, stated that plaintiff was a competent B-Operator based on his efficient completion of paperwork, maintenance of smooth operations during night shifts and proficient handling of routine tasks. Record Doc. No. 39-3 at p. 2. Daigle stated that plaintiff excelled during night shifts "when other operations were not ongoing and there were fewer interactions with others required." Id. However, Daigle attested that plaintiff exhibited a negative attitude, was not a team player, did not comprehend the "big picture" of platform operations, lacked leadership skills, did not mentor subordinates, lacked capacity for detailed troubleshooting, disrespected authority of his superiors and balked at constructive criticism or helpful demonstrations from A-Operators. Id. Daigle further noted plaintiff's consistent "hostility toward everyone on the platform" and "constant references to his desire to leave the platform" and seek work elsewhere. Id. Finally, Daigle recounted a safety audit incident during which Whitfield engaged in a verbal altercation with an Energy XXI supervisor in which Whitfield "started to curse and holler" at the supervisor for allegedly insulting plaintiff. Record Doc. No. 39-3 at p. 3. Daigle

attested that based on his assessment that plaintiff was unqualified for the A-Operator position, he did not recommend plaintiff for promotion to Energy XXI foremen Larimer and Freeman, who held the ultimate authority to promote plaintiff on MP-73A. Id. at p. 2. In an email unrelated to the promotion at issue, Energy XXI personnel Larimer and Freeman concurred with Daigle's assessment of plaintiff's job performance and additionally voiced their own concerns about the safety audit incident. Record Doc. No. 39-2 at pp. 23–24.

The affidavits submitted by plaintiff attesting to his positive qualifications were prepared by non-decision-makers, either plaintiff himself or others who were merely plaintiff's co-workers. Perhaps a factfinder might assign more weight to the declaration of plaintiff's direct supervisor and the assessments of the Energy XXI personnel. However, a court may not resolve credibility or weight of the evidence issues on summary judgment. Thus, the conflicting assessments of plaintiff's job qualifications submitted by the parties create a triable issue of disputed material fact as to plaintiff's qualifications for an A-Operator position. Because plaintiff has established that he is a member of protected classes who was subjected to an adverse employment decision and there are genuine issues of material fact as to plaintiff's qualifications and application for the subject promotion, the court will proceed from the prima facie case phase of the McDonnel Douglas framework to the next step of the analysis.

Wood Group has articulated through lead operator Daigle's declaration that plaintiff was not recommended for promotion based on his lack of qualifications for the A-Operator position. As stated above, Daigle based his decision not to recommend plaintiff for

promotion on his assessment that plaintiff did not possess the skill set required for an A-Operator. The court finds that Wood Group has met its burden to set forth, through admissible evidence, a legitimate, non-discriminatory reason for its decision not to recommend plaintiff for promotion to A-Operator.

Thus, Wood Group's proffered reason shifts the burden to Whitfield to produce admissible, substantial evidence that his former employer's legitimate, nondiscriminatory reason for non-promotion is pretextual. Plaintiff's affidavits and deposition testimony attempt to show that Wood Group's reason is false or unworthy of credence because (1) Whitfield was clearly better qualified than Prejean for the promotion at issue; and (2) workplace comments made by MP-73A employees show evidence of race and/or age-based animus in Wood Group's employment decisions.

To show that he was "clearly better qualified" than Prejean and raise a triable fact question as to whether discrimination was a factor in Wood Group's promotion recommendation decision, Whitfield must present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Moss v. BMC Software, Inc., 610 F.3d 917, 923 (5th Cir. 2010) (quoting Deines v. Texas Dep't of Protective & Regulatory Servs., 164 F.3d 277, 280–81 (5th Cir. 1999)). "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination." Id. (citation omitted). Thus, "the bar is set high for this kind of evidence." Id.

Plaintiff testified that he believed that his superior qualifications for the A-Operator promotion were obvious to his MP-73A supervisors and implicit in his daily job performance. He stated that his "skills were undisputed" and that he never discussed his promotion eligibility with Daigle because "[y]ou don't have to discuss what you prove day in and day out." Record Doc. No. 39-4 at pp. 32, 35. In his affidavit, he stated that "[m]y co-workers and leaders saw my dedication and work ability." Record Doc. No. 44-1 at p. 1. The affidavits submitted by plaintiff's former co-workers speak generally about plaintiff's competence and qualifications as a production operator. Record Doc. No. 44-2. Plaintiff also asserts that the length of his tenure as a production operator made him more qualified for the position than Prejean, who had fewer years of experience than plaintiff. Plaintiff testified that he learned that Prejean "had two years' experience as an operator," according to conversations plaintiff had with Prejean on MP-73A. Record Doc. No. 39-4 at p. 55. Plaintiff's resume indicates that at the time of Prejean's promotion to A-Operator on January 18, 2015, he had roughly 4.5 years of experience as a production operator. Id. at pp. 71–73. Plaintiff stated that he "spoke with [Prejean] before [Prejean] got the promotion" and that plaintiff had stated to Prejean that "if [Prejean] got it, I was ready to quit, because how could somebody with two years get a promotion over me." Id. at p. 55.

As to plaintiff's self-assessment of his superior job performance and the positive assessments of his former co-workers, "[m]erely disagreeing with an employer's negative performance assessment is insufficient to show pretext" for race or age-based animus. Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 325 (5th Cir. 2002). The only evidence

Whitfield presents to demonstrate that he was "clearly better qualified" than Prejean for the promotion is a conversation with Prejean in which Whitfield learned that he had more years of experience than Prejean. As to length of tenure, "An attempt to equate years served with superior qualifications . . . is unpersuasive." Moss, 610 F.3d at 923 (citation omitted). "Obviously, work experience is one component of defining who is more qualified, but greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." Id. (citation omitted). Plaintiff presents no other evidence of Prejean's qualifications for the A-Operator position. Thus, he has not sustained his burden to present evidence of widely disparate qualifications from which a jury could conclude that no reasonable person exercising impartial judgment could have chosen Prejean over plaintiff for the promotion at issue.

"Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." Lemaire, 480 F.3d at 391. "Management does not have to make proper decisions, only non-discriminatory ones." Delaval, 824 F.3d at 480 (quotation omitted). "[C]orrect or not, we will not second-guess [defendant's] decision to disbelieve [plaintiff] absent a showing of actual [discriminatory] purpose." Harris, 329 F. App'x at 557 (citing Lemaire, 480 F.3d at 391). "Even if evidence suggests that a decision was wrong, [the court] will not substitute our judgment . . . for the employer's business judgment." Scott v. Univ. of Miss., 148 F.3d 493, 509 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).

In his deposition testimony and affidavit, plaintiff offers various race-based comments by some of his co-workers as evidence of racial animus. He testified that Godchaux recited a joke to him and another African-American employee stating, "Do you know what a little white baby is with wings? You know what a little black baby is with wings?" Record Doc. No. 39-4 at p. 8. Plaintiff stated that Godchaux referred to former President Barack Obama as "that boy." Record Doc. No. 44-1 at p. 2. He said that Godchaux was liberal with his use of the word "nigger" and would "partake in . . . the misuse of color" in referring to white men by this term. Record Doc. No. 39-4 at pp. 9, 51. When asked how frequently Godchaux would make race-based jokes, epithets and commentary, plaintiff testified, "[n]ot very often." Id. at p. 9. When asked why he believed Godchaux discriminated against him, plaintiff testified that based on Godchaux's "action," he concluded that Godchaux "didn't like my color . . . didn't like my age," and that the race-based commentary was directed at him personally Id. at p. 52.

Plaintiff stated that both Godchaux and Daigle showed him pictures of tennis star Serena Williams "as an ape" or "gorilla," former First Lady Michelle Obama "as a man" and made "constant" and "snide" jokes involving these individuals. Id. at pp. 49–51; Record Doc. No. 44-1 at p. 2. When asked if Daigle used race-based epithets and commentary, plaintiff testified that "Brandon [Godchaux] was the one that was more fluid with" use of racial epithets and that Daigle was "more of just . . . the chuckle guy" responding to Godchaux's racial commentary. Record Doc. No. 39-4 at pp. 51–52. Whitfield stated that he once referred

to Daigle as "my brother," and Daigle "sharply and quickly stated that [plaintiff] was not his brother." Record Doc. No. 44-1 at p. 2.

When asked whether Energy XXI's employees were motived by racism or ageism in reaching their employment decisions as to plaintiff, he testified "[I] [d]on't know." Id. at p. 53. When asked if he could identify any platform employees who were treated differently because they were younger than plaintiff, he testified that he could not. Id. at p. 59. When asked to identify anyone his age or older who was treated unfairly, plaintiff identified an employee named Curtis Keys. Id.

For comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. Rubinstein v. Admin'rs of Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000) (citing Brown v. CSC Logic, Inc., 82 F.3d 651, 655–56 (5th Cir. 1996)).

Plaintiff has failed to produce sufficient evidence that Daigle and Godchaux's workplace commentary was discriminatory under the above-stated standards for Title VII or ADEA cases. As stated above, it is undisputed that Godchaux never was employed by Wood Group, and plaintiff has presented no competent evidence to show that Godchaux had any authority over the promotion decisions at issue. Daigle possessed authority over plaintiff's promotion decisions only insofar as he had the discretion to recommend employees to Energy XXI's foremen for promotion. However, Whitfield's testimony fails to offer evidence that

Daigle's race-based jokes were related or proximate in time to the promotion decisions at issue and presents no evidence whatsoever of age-based commentary by Daigle. "The only evidence he offers is that the [race-based] comments were, in fact, made." Id. Such stray remarks are insufficient to support an inference of discrimination. Id.; Krystek v. Univ. of S. Miss., 164 F.3d 251, 256 (5th Cir. 1999); Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 (5th Cir. 1995); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1221 (5th Cir. 1995). In addition, plaintiff has provided no evidence that Energy XII's foremen, the platform employees with the ultimate decision-making authority to promote plaintiff, engaged in race or age-based commentary of any kind.

On this record, plaintiff has failed to sustain his burden to produce evidence to show that Wood Group's proffered reason for not recommending him for the position filled by Prejean was mere pretext for race or age-based discriminatory intent or motive. He has produced no evidence of race or age-based animus that might create a material fact dispute requiring trial as to his ultimate burden to show intentional discrimination. Accordingly, no genuine issue of material fact is presented as to plaintiff's race and age discrimination failure to promote claims and defendant is entitled to summary judgment as a matter of law.

b. Failure to Hire Claim

It is undisputed that on June 22, 2016, plaintiff applied and was interviewed for an A-Operator position with Wood Group by a recruiter for U.S. Offshore and subsequently did not receive appointment to the position. Record Doc. No. 39-4 at pp. 45–47. As stated above, plaintiff's Wood Group lead operator believed he was unqualified for an A-Operator

position. Plaintiff testified that he did not know who made the decision not to hire him, and there is no evidence in the record to indicate if the decision-maker was aware of plaintiff's application. Id. at p. 47. Regardless of the decision-maker's knowledge, plaintiff cannot establish a prima facie case because he provides no evidence to establish that Wood Group filled the A-Operator position with an individual outside of the protected classes. Plaintiff testified that the position he applied for was filled, but he does not know who received the position or that person's race, age or qualifications. Id. Furthermore, as discussed above, he presents no evidence sufficient to create a triable issue that the decision not to hire him for the A-Operator position was motivated by age or race-based animus. Accordingly, defendant is entitled to summary judgment as a matter of law as to plaintiff's failure to hire claim.

E.    Termination Claim

It is undisputed that defendant subjected plaintiff to an adverse employment decision when he was laid off on May 13, 2016. Wood Group argues that plaintiff cannot establish the third prong of a prima facie case under the reduction-in-force standard, i.e., that he was qualified to assume a position that was available at the time of discharge, because it is undisputed that no assignment was available at the time of his lay-off. Wood Group also argues that plaintiff cannot establish the fourth prong of the reduction-in-force standard, because he has provided no evidence that Wood Group intentionally discriminated against him based on age or race in reaching its decision to terminate him.

As to the third prong, the undisputed summary judgment evidence shows that plaintiff was removed from MP-73A at the request of Energy XXI's foremen, placed on "float" and

laid off per Wood Group's regular business practice when no assignment became available within 30 days of platform removal. Record Doc. Nos. 39-2 at p. 3; 39-4 at pp. 18–19, 42–43. Plaintiff's deposition testimony confirms that while on "float," he "stayed in constant contact with the project managers asking for a new position," but ultimately was laid off after he was "never re-picked up" within the 30-day period. Record Doc. No. 39-4 at pp. 19–20. Plaintiff's deposition testimony and affidavit attest to plaintiff's self-professed qualifications as a production operator and his disbelief and frustration as to why a person with his qualifications was not assigned to a new job. However, plaintiff "has identified no <u>available</u> position for which he was qualified when he was fired." <u>Creaghe</u>, 98 F. App'x at 975 (emphasis added). Plaintiff thus fails to satisfy the third prong of the prima facie test for reduction-in-force cases.

As to the fourth prong, there is no competent summary judgment evidence to show that Wood Group discriminated against plaintiff based on race or age in reaching its termination decision. The record reflects that plaintiff was removed from MP-73A at the request of Energy XXI's foremen, who cited plaintiff's expression of his intent to leave the platform for employment with Shell, inability to get along with co-workers, disrespect of authority, lack of team spirit and overall bad attitude as the reasons for their decision. Record Doc. No. 39-2 at pp. 23–24. Plaintiff presents no evidence indicating that his removal from the platform was based on race or age, rather than the above-mentioned job performance assessment. Plaintiff does not dispute that the 30-day "float" limitation was Wood Group's regular business practice in laying off employees. Plaintiff offers only his own subjective

belief that he was laid off based on his race and age. Record Doc. No. 39-4 at p. 49. The Fifth Circuit has held that a subjective belief of discrimination is "insufficient to create an inference of the defendant['s] discriminatory intent." Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004) (quoting Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999). Plaintiff presents no evidence that race or age motivated Wood Group's decision to terminate his employment. Plaintiff thus fails to satisfy the fourth prong of the prima facie test.

Even if Whitfield could establish a prima facie case, Wood Group has met its burden to provide a legitimate, non-discriminatory reason for terminating plaintiff. As the platform client, Energy XXI had the authority to remove plaintiff from the platform. Energy XXI's reasons for plaintiff's removal were based on a negative job performance assessment relayed to Energy XXI's foremen by plaintiff's direct supervisor. Wood Group followed normal business practice by placing plaintiff on "float" for 30 days after his removal and laying him off after no job assignment materialized by the end of that period.

Plaintiff presents only his subjective opinion that he should have been reassigned while on "float," his self-assessment of his own performance and opinions of co-workers about plaintiff's attributes, but no competent evidence to show that its reason was pretext for race and/or age discrimination. As stated above, mere disagreement with an employer's negative performance assessment and the stray remarks about which plaintiff testified are insufficient to show pretext. Perez, 307 F.3d at 325; Rubinstein, 218 F.3d at 401; Brown, 82 F.3d at 655–56; Krystek, 164 F.3d at 256; Ray, 63 F.3d at 434; Mooney, 54 F.3d at 1221.

On this record, plaintiff has failed to sustain his burden to produce evidence sufficient to establish prima facie cases of race and age discrimination as to his termination claim. Even if plaintiff had done so, he has failed to rebut defendant's legitimate, non-discriminatory reason for his termination, and he offers no proof sufficient to create a triable issue as to his ultimate burden to show race or age-based animus. Accordingly, no genuine issue of material fact is presented as to plaintiff's race and age discrimination termination claim and defendant is entitled to summary judgment as a matter of law.

F.   Hostile Work Environment and Retaliation Claims

Plaintiff's affidavit in his opposition to the summary judgment motion asserts claims of retaliation and hostile work environment that were not alleged in plaintiff's complaint or his charge of discrimination. Record Doc. No. 44-1. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutrera v. Bd. of Sup'rs of Louisiana State Univ., 429 F.3d 108, 113 (5th Cir. 2005) (emphasis added). A properly pleaded complaint must give "fair notice of what the claim is and the grounds upon which it rests." Ashcroft v. Iqbal, 556 U.S. 662, 698–99 (2009) (citations and alterations omitted). "Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." De Franceschi v. BAC Home Loans Servicing, L.P., 477 F. App'x 200, 204 (5th Cir. 2012). Because plaintiff asserts retaliation and hostile work environment claims for the first time in his opposition to the summary judgment motion, the court will not consider them.

<u>CONCLUSION</u>

For all of the foregoing reasons, plaintiff's Motions to Appoint Counsel and for Issuance of Subpoenas are DENIED. Defendant's motion for summary judgment is GRANTED and plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs. Judgment will be separately entered.

New Orleans, Louisiana, this _____5th_____ day of September, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE